940 F.2d 653
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Michael CHAMBERS, Defendant-Appellant.
 No. 90-5664.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1991.
Decided July 29, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. J. Calvitt Clarke, Jr., District Judge. (CR-88-67-N)
 James Orlando Broccoletti, Zoby & Broccoletti, Norfolk, Va., for appellant.
 William G. Otis, Assistant United States Attorney, Alexandria, Va. (Argued), for appellee; Henry E. Hudson, United States Attorney, Laura M. Everhart, Assistant United States Attorney, Norfolk, Va., on brief.
 E.D.Va. [APPEAL AFTER REMAND FROM 898 F.2D 148].
 AFFIRMED.
 Before WIDENER and MURNAGHAN, Circuit Judges, and JAMES B. McMILLAN, Senior United States District Judge for the Western District of North Carolina, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Michael P. Chambers was convicted of six counts of involuntary manslaughter pursuant to 18 U.S.C. Secs. 7, 1112 & 3238. The district court sentenced Chambers to 120 months of imprisonment and one year of supervised release.[1] Chambers argues that the district court improperly departed from the sentencing range proposed under the Sentencing Guidelines. We affirm.
 
 
 2
 Chambers' conviction arose from an automobile accident that occurred on April 30, 1988 on the Guantanamo Naval Base in Cuba. A patrolman observed Chambers driving at approximately forty miles per hour in a twenty-five miles per hour zone and attempted to pull him over. A two mile chase ensued, during which Chambers accelerated to estimated speeds of between 100 and 110 miles per hour and failed to stop for two stop signs and a red light. Chambers' car then collided with a Navy Exchange van carrying nine off-duty servicemen and a civilian driver. The impact of this collision caused the van to become airborne and catch on fire. As a result, six of the van's occupants were killed and three others were seriously injured. Chambers, who received only minor injuries, was found to have a blood alcohol level of .218.
 
 
 3
 In response to the government's motion for an upward departure from the sentencing range proposed under the Sentencing Guidelines, the district court ordered that Chambers be imprisoned for a period of 120 months. The court properly noted that 18 U.S.C. Sec. 3553(b) provides for upward departures if there is a determination that the case involves aggravating circumstances "not adequately taken into consideration by the Sentencing Commission." Our review of this decision is based on 18 U.S.C. Sec. 3742(f)(2), which states in pertinent part that "[i]f the court of appeals determines that the sentence ... is outside the applicable guidelines range and is unreasonable ... it shall set aside the sentence and remand the case for further sentencing proceedings...."
 
 
 4
 As the first steps in our review of the reasonableness of the district court's departure, we must determine whether the court properly identified aggravating circumstances and ascertained whether these circumstances actually existed in Chambers' case. See United States v. Wright, 924 F.2d 545, 547 (4th Cir.1991); United States v. Chester, 919 F.2d 896, 901 (4th Cir.1990). In this regard, the district court stated that it relied upon the circumstances identified in U.S.S.G. section 4A1.3 (prior sentences and similar misconduct not used in computing the criminal history category), section 5K2.9 (criminal purpose to conceal commission of another offense), section 5K2.14 (endangering national security, public health, or safety), section 5K2.8 (defendant's extreme conduct), and section 5K2.0 (general departure provision).
 
 
 5
 The district court made findings indicating that these aggravating circumstances were presented by the facts of Chambers' case. It found that Chambers had two prior convictions for driving under the influence of alcohol and several speeding tickets, all of which occurred at the naval base. As military offenses, these circumstances were not taken into account in calculating Chambers' criminal history category under the Guidelines. The district court also found that Chambers had attempted to avoid arrest, and thereby presumably conceal his drunk driving offense and the fact that he was driving on a suspended license, by fleeing from the base security officers. Similarly, the court found that this attempted escape involved driving at speeds of in excess of 100 miles per hour, an act which endangered the health and safety of all those traveling in the vicinity as motorists or pedestrians. Finally, the court found that Chambers' conduct in driving drunk on a suspended license despite prior convictions for drunk driving, in attempting to escape the base security authorities, in traveling in excess of 100 miles per hour, and in killing or injuring nine people was extreme, heinous, and egregious. On the basis of the record before us, we conclude that the district court was not clearly erroneous in finding that the aggravating circumstances it identified were presented by the facts of this case. See Chester, 919 F.2d at 900; United States v. Hummer, 916 F.2d 186, 192 (4th Cir.1990), cert. denied, 59 U.S.L.W. 3702 (1991).
 
 
 6
 The next step in our review involves the district court's determination that the Sentencing Commission had not adequately taken into consideration the aggravating circumstances of Chambers' case. As indicated previously, four of the five circumstances relied upon by the district court were what we have called "Commission-identified" circumstances expressly set forth by the Sentencing Commission in its policy statements as factors that the Commission had "not been able to fully take into account in formulating precise guidelines." U.S.S.G. Sec. 5K2.0; see United States v. Summers, 893 F.2d 63, 67 (4th Cir.1990). We have indicated that when the Commission has thus specifically identified a circumstance as one that may warrant a departure, "[o]ur analysis is simplified ..." because "[t]he existence of this 'Commission-identified' departure establishes per se that this circumstance may exist." Summers, 893 F.2d at 67. Chambers nevertheless insists that a departure on the basis of endangering public health or safety was improper in that the involuntary manslaughter guideline already provided for a base offense level of fourteen, rather than ten, because of his "reckless" conduct. U.S.S.G. Sec. 2A1.4. Reviewing this matter de novo, see Hummer, 916 F.2d at 192, we reject Chambers' contention that reckless conduct, by definition, necessarily subsumes the circumstance of endangering the public safety. Furthermore, we wholeheartedly agree with the district court that Chambers' conduct went well beyond the degree of deviation from the standard of care contemplated by the term "reckless."
 
 
 7
 The district court also relied upon section 5K2.0, which indicates that along with "Commission-identified" aggravating circumstances, "[a]ny case may involve factors in addition to those identified that have not been given adequate consideration by the Commission." The court reviewed Chambers' conduct surrounding the deaths of the servicemen and their driver, expressed the view that "it is hard for the Court to imagine more egregious conduct," and stated that its review of the Guidelines had led to the conclusion that the Commission had not taken into consideration aggravating circumstances of this severity. Chambers argues that all of the aggravating circumstances of his case were taken into account in the formulation of the Guidelines. We, however, are in agreement with the district court's determination; Chambers' conduct went beyond that of the ordinary case of involuntary manslaughter and does not represent one of the typical cases for which the applicable guidelines were designed to apply.
 
 
 8
 Finally, we must determine whether the aggravating circumstances identified by the district court should have resulted in a departure and, if so, whether the departure actually ordered was reasonable. See Wright, slip op, at 4. Chambers argues that the fact that the court sentenced him to 120 months when the suggested Guideline range was twenty-four to thirty months shows that the extent of the departure was unreasonable. We, however, believe that "the mere fact that a departure sentence exceeds by several times the maximum recommended under the Guidelines is of no independent consequence in determining whether the sentence is reasonable." United States v. Lopez-Escobar, 884 F.2d 170, 173 (5th Cir.1989) (quoting United States v. Roberson, 872 F.2d 597, 606 n. 7 (5th Cir.), cert. denied, 58 U.S.L.W. 3217 (1989)). In view of the aggravating circumstances identified by the district court, we are of opinion that the district court did not abuse its discretion in departing from the Guidelines and calculating Chambers' sentence on the basis of its determination that twenty months imprisonment was proper punishment for each count of manslaughter.[2] See Hummer, 916 F.2d at 192. We are of opinion that the sentence imposed by the district court was reasonable.
 
 
 9
 Accordingly, the judgment of the district court is
 
 
 10
 AFFIRMED.
 
 
 
 [1]
 This case was a resentencing. Chambers had been sentenced under previous law on the theory that the Sentencing Guidelines were constitutionally invalid, which did not turn out to be the case
 
 
 [2]
 While we have generally approved the use of other analogous guideline provisions to gauge the reasonableness of a court's departure decision, we have rejected the notion that district courts "necessarily must force every aggravating factor through the guidelines structure to assess its proper, incremental value as a sentence enhancement." Hummer, 916 F.2d at 194 n. 7. Our task is to assess the final conclusion of whether the sentence imposed is reasonable. Hummer, 916 F.2d at 195